**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| OLUKEMI ADEWOLE, on behalf of herself and all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br>　v.<br>THE PROCTER & GAMBLE COMPANY D/B/A ORAL-B,<br><br>　　　　　　　　Defendant. | Case No. _____<br><br>**PLAINTIFF OLUKEMI ADEWOLE'S CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

　　　　Plaintiff Olukemi Adewole ("**Ms. Adewole**" or "**Plaintiff**"), individually and on behalf of the Classes defined below of similarly situated persons, allege the following against The Proctor & Gamble Company d/b/a Oral-B ("**P&G**" or "**Defendant**") based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE ACTION

　　　　1.　　This is a putative class action pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §§ 227, *et seq*. ("**TCPA**") and the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 14-3201, *et seq*. ("**MCPA**").

　　　　2.　　To promote its services and products, Defendant engages in unsolicited and continuous text messaging practices, even after consumers opt out of Defendant's solicitations.

1

3. Plaintiff Olukemi Adewole is one of the millions of consumers who have listed telephone numbers on the National Do-Not-Call Registry. Nonetheless, she has received numerous text messages on her Cellphone Number[1] made by, or on behalf of, P&G.

4. Ms. Adewole now brings this action, on behalf of herself and others similarly situated, seeking to recover statutory compensatory and punitive damages, and to secure injunctive relief to require P&G to cease its illegal conduct.

## PARTIES

5. Plaintiff Olukemi Adewole is, and at all times mentioned herein was, an individual citizen of the State of Maryland residing in Prince George's County.

6. Defendant P&G is an Ohio corporation with its headquarters and principal place of business at One Procter & Gamble Plaza, Cincinnati, Ohio 45202.

7. P&G is a multinational company that develops, manufactures, markets, and sells a diverse range of branded consumer products. Oral-B and Crest are brands of oral hygiene products owned by P&G and sold throughout this District, the State of Ohio, and the United States.

## JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction over this action because it arises under the laws of the United States. *See* 28 U.S.C. §1331 and *Mims v. Arrow Fin. Serv., LLC*, 565 U.S. 368 (2012).

9. This Court has supplemental jurisdiction over Plaintiff's MCPA claims pursuant to 28 U.S.C. § 1367.

10. Further, this Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million,

---

[1] The precise definition of Plaintiff's "Cellphone Number" is defined below.

exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

11. This Court has jurisdiction over Defendant because it operates and has its principal place of business in this District. Defendant's contacts with this District are so continuous and systematic as to render the Defendant essentially at home in this District. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

12. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because Defendant regularly conducts a significant amount of business within this District, and is subject to this Court's personal jurisdiction with respect to this civil action. As such, Defendant "resides" in this District. Venue is also proper in this District because a substantial part of the events or omissions giving rise to this action occurred in this District.

## APPLICABLE LAW

13. In 1991 Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing practices, which Congress recognized as a nuisance and an intrusive invasion of privacy. The purpose of the TCPA is to protect the privacy interests of Americans by placing restrictions on unwanted advertising and solicitation from telemarketing phone calls. S. REP. 102-178, 1, 1991 U.S.C.C.A.N. 1968, 1968.

14. The Federal Communications Commission ("**FCC**") has specifically held that "[t]he TCPA's consent requirement applies to short message service messages in addition to voice calls." *See* In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 FCC Rcd 7961 ¶ 10 (2015). Therefore, it is well established that any

3

and all laws under the TCPA are applicable to any and all advertising and/or telemarketing text messaging.

15. Consumers who do not want to receive telephone solicitations via text message may indicate their preference by registering their cellular phone numbers on the National Do-Not-Call Registry ("**NDNCR**"). 47 C.F.R. § 64.1200(c)(2); *see LaGuardia v. Designer Brands Inc.*, 2022 U.S. Dist. LEXIS 68885 at *4, S. D. Ohio (April 14, 2022) (noting that 47 C.F.R. § 64.1200(c) creates a private right of action for a recipient of an unsolicited text message advertisement); *see also* 47 C.F.R. § 64.1200(f)(15) (defining "telephone solicitation" as the initiation of a "message for the purpose of encouraging the purchase … of … goods.").

16. According to the Federal Trade Commission, the NDNCR, which was established in 2003, has over 239 million active registrations.[2]

17. So long as a number appears on the NDNCR, it is illegal for a company to send text messages to that number. 47 U.S.C. § 227(c)(3)(F). These registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the cellular phone number is removed by the database administrator. 47 C.F.R. § 64.1200(c)(2).

18. Federal courts have held that a single unsolicited telemarketing text message to a wireless number "poses 'the same kind of harm that common law courts recognize – a concrete harm that Congress has chosen to make legally cognizable.'" *See Shank v. Givesurance Ins. Servs.*, 2022 U.S. Dist. LEXIS 32259 at *12-13, S. D. Ohio (February 24, 2022) (Adopting the standards of the Second, Fifth, Seventh, and Ninth Circuits in light of the fact that the Sixth Circuit has not addressed the issue); *see also LaGuardia v. Designer Brands Inc.*, 2021 U.S. Dist. LEXIS 170704, S. D. Ohio (September 9, 2021).

---

[2] *See FTC Releases FY 2019 National Do Not Call Registry Data Book*, available at: https://www.ftc.gov/news-events/press-releases/2019/10/ftc-releases-fy-2019-national-do-not-call-registry-data-book.

19. One exception to this rule is that the TCPA allows a company to solicit a consumer whose phone number is on the NDNCR when it has an "established business relationship" ("**EBR**") with that consumer. 47 U.S.C. § 227(a)(4) (excluding from the definition of "telephone solicitation . . . any person with whom the caller has an established business relationship"). The FCC defined an EBR to mean "a prior or existing relationship formed by a voluntary two-way communication between a[n] . . . entity and a" consumer on the basis of the consumer's "purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call . . . , which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(5). Among other things, a consumer can terminate an EBR with a company by asking the company to stop calling, even if the consumer continues to transact business with that company. *Id.* at § 64.1200(f)(5)(i).

20. A consumer whose number is on the NDNCR and has received more than one text message within any twelve-month period by, or on behalf of, the same company in violation of the TCPA, can sue the company and seek the greater of actual damages or $500, a figure that may be trebled for willful or knowing violations. 47 U.S.C. § 227(c)(5).

21. It is simple for companies to avoid text messaging numbers listed on the NDNCR. They can easily and inexpensively "scrub" their contact lists against the NDNCR database. The scrubbing process identifies those numbers on the NDNCR, allowing companies to remove those numbers and ensure that no texts are placed to consumers who opt-out of advertising and/or telemarketing text messages.

22. To avoid violating the TCPA by text messaging registered numbers, companies, *inter alia*, must scrub their contact lists against the NDNCR at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

23. Regulations implementing the TCPA also require companies to maintain company-Specific Do-Not-Call Registries ("**Internal Do-Not-Call Registries**" or "**IDNCR**"). 47 C.F.R. § 64.1200(d). Once a company receives a request from a consumer not to receive text messages, the number must be placed on the company's IDNCR within a reasonable time, not to exceed thirty days from the date of the request. *Id*. at § (d)(3).

24. It has long been the law that a seller of goods or services can be liable for TCPA violations even if the seller does not directly place or initiate the text messaging. The provision that establishes a private right of action against an entity that violates the NDNCR restrictions provides that "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring an action for damages and injunctive relief. 47 U.S.C. § 227(c)(5) (emphasis added). Likewise, 47 C.F.R. § 64.1200(d)(3) provides that once a number is added to a company's IDNCR, the company "on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request."

25. As explained by the FCC, the TCPA and its regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Mem. and Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

26. The FCC reiterated this principle in 2005, when it stated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules, and calls placed by a third party on behalf of that company are treated as if the company itself placed the call." See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of State Farm Mutual Automobile Insurance Company

6

for Clarification and Declaratory Ruling, Declaratory Ruling, 20 FCC Rcd. 13664, 13667 ¶ 7 (2005).

27. The FCC reaffirmed this in 2013, when it held that (a) a seller may, under principles of apparent authority, actual authority, and ratification, be liable for violations of § 227(c) by third parties, and (b) a seller may also be liable, under the express terms of § 227(c), for calls placed "on behalf of" the seller. *In re Joint Pet. Filed by Dish Network*, 28 FCC Rcd. 6574 (2013); *See Keating v. Peterson's Nelnet, LLC,* No. 1:11 CV 1775, 2014 U.S. Dist. LEXIS 64920, at *15 (N.D. Ohio May 12, 2014) (finding that a defendant is vicariously liable for unsolicited text message advertisements when the actual person or entity who contacted the plaintiff acted as an agent of the defendant and the defendant controlled or had the right to control them and the manner and means of the text messaging campaign they conducted.)

## FACTUAL ALLEGATIONS

**P&G's Violations of the TCPA with Regard to Ms. Adewole**

28. Ms. Adewole originally registered her cellular phone number (XXX) XXX-5799 (her "**Cellphone Number**") with the NDNCR on March 03, 2018. This Cellphone Number is the phone she uses regularly as her residential number, and as one of her main forms of communication. Ms. Adewole does not have a residential landline phone number for her personal residence and did not have a landline at all times relevant to this matter. A registration verification email for the Cellphone Number is attached hereto and incorporated herein as **Exhibit 1**.

29. On November 12, 2022, Defendant began sending unsolicited text message advertisements to Plaintiff's Cellphone Number.

30. The number used by Defendant to transmit the subject text message solicitations (99462) is known as a "Short Code." A Short Code is a five- or six-digit phone number that can

7

be used to send and receive text messages. The Common Short Code System was created by the Cellular Telecommunications Industry Association to "offer marketers unique opportunities to engage their audiences via text messaging."[3]

31. The text messages from Defendant to Plaintiff's Cellphone Number are telephonic solicitations because they were made with the purpose of soliciting the sale of consumer goods and/or services.

32. Plaintiff never provided consent or requested communication via text message from Defendant, but nonetheless received multiple messages soliciting her to purchase products from the company.

33. Plaintiff made it clear that she did not wish to continue receiving text messages from Defendant by responding to Defendant's message with her own message stating "STOP." Despite expressly informing Defendant that she did not wish to continue receiving text message advertisements, Plaintiff continued to receive a steady stream of advertising and/or telemarketing text messages from the company to her Cellphone Number, each one trying to sell her on their products.

34. Each of the foregoing text messages to her Cellphone Number came from P&G or someone text messaging on P&G's behalf.

35. At the time Ms. Adewole received each of these text messages to her Cellphone Number, that number had been on the NDNCR for more than four years. As a result, P&G should not have sent any advertising and/or telemarketing text messages to her.

36. Defendant, or someone acting on its behalf, violated Plaintiff's privacy by making each of the above referenced unwanted advertising and/or telemarketing text messages. These

---

[3] *See* https://www.ctia.org/about-ctia/programs/ (last viewed on April 7, 2023).

messages constitute a nuisance because they are annoying and harassing. Plaintiff was harmed by the receipt of Defendant's telephonic solicitations because she expended time to deal with the text messages, experienced frustration that the messages would not stop, had reduced phone storage due to the text messages, decreased battery power, and slower cellular service.

37. Plaintiff is informed and believes, and thereon alleges, that Defendant has sent a significant number of unwanted and illegal advertising and/or telemarketing text messages to thousands of other persons in Maryland and throughout the entire United States who have either registered their cellular phone numbers with the NDNCR or have expressly asked P&G to stop sending advertising and/or telemarketing text messages to them.

## CLASS ACTION ALLEGATIONS

**National Do-Not-Call Registry ("NDNCR") Class**

38. Plaintiff brings Count I of this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class tentatively defined as:

> All natural persons in the United States who, from four years prior to the commencement of this litigation until the class is certified, received more than one text message solicitation from P&G in a 12-month period on their Cellphone Number or cellular phone line telemarketing P&G's products or services more than 31 days after registering their cellular phone number with the National Do-Not-Call Registry. Excluded from this class definition are any employees, officers, directors of P&G, and attorneys appearing in this case, and any judge assigned to hear this action.

39. Plaintiff reserves the right to modify this class definition as she obtains relevant information, including advertising and/or telemarketing text message records, through discovery.

40. Each of the persons identified in this NDNCR Class has been harmed by the acts of Defendant because their privacy has been violated, they were subject to annoying and harassing text messages that constitute a nuisance, and/or they were charged for incoming calls.

**Internal Do-Not-Call Registry ("IDNCR") Class**

41. Plaintiff brings Count II of this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class tentatively defined as:

> All natural persons in the United States who, from four years prior to the commencement of this litigation until the class is certified, received one or more text message on their Cellphone Number or cellular phone line telemarketing P&G's products or services after registering their cellular phone number with P&G's Internal Do-Not-Call List. Excluded from this class definition are any employees, officers, directors of P&G, and attorneys appearing in this case, and any judge assigned to hear this action.

42. Plaintiff reserves the right to modify this class definition as she obtains relevant information, including telemarketing call records, through discovery.

43. Each of the persons identified in this Internal Do-Not-Call List Class has been harmed by the acts of Defendant because their privacy has been violated, they were subject to annoying and harassing text messages that constitute a nuisance, and/or they were charged for incoming text messages.

**MCPA Sub-Class**

44. Plaintiff brings Count III of this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a sub-class tentatively defined as:

> All natural persons in the State of Maryland who, from four years prior to the commencement of this litigation until the class is certified, received one or more text message on their Cellphone Number or cellular phone line telemarketing P&G's products or services after registering their cellular phone number with P&G's Internal Do-Not-Call List. Excluded from this class definition are any employees, officers, directors of P&G, and attorneys appearing in this case, and any judge assigned to hear this action.

45. Plaintiff reserves the right to modify this sub-class definition as she obtains relevant information, including telemarketing call records, through discovery.

10

46. Each of the persons identified in this MCPA Sub-Class has been harmed by the acts of Defendant because their privacy has been violated, they were subject to annoying and harassing text messages that constitute a nuisance, and/or they were charged for incoming text messages.

**The Action Meets the Requirements to be Certified as a Class**

47. Plaintiff is a member of all proposed classes.

48. The proposed classes can be identified through telephone records and databases used in transmitting the advertising and/or telemarketing text messages.

49. <u>Numerosity</u>. The number of Putative Class Members is believed to be in the thousands, rendering the classes so numerous that individual joinder of all class members is impracticable.

50. <u>Commonality</u>. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

   a. Did Defendant send, or have they had sent, advertising and/or telemarketing text messages to Plaintiff and the Putative Class Members?

   b. Whether Defendant's conduct violated 47 U.S.C. § 227(c) (the National Do-Not-Call Registry)?

   c. Whether Defendant willfully or knowingly violated 47 U.S.C. § 227(c) (the National Do-Not-Call Registry)?

   d. Whether Defendant's conduct violated 47 C.F.R. § 64.1200(d)(3) (the Internal Do-Not-Call Registry)?

   e. Whether Defendant willfully or knowingly violated 47 C.F.R. § 64.1200(d)(3) (the Internal Do-Not-Call Registry)?

    f.    Whether Defendant's conduct violated Md. Code Ann., Com. Law § 14-3201(2) (the MCPA)?

51.    <u>Typicality</u>. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of the Members of the three (3) proposed Putative Classes. Plaintiff would only seek individual or actual damages if class certification is denied. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other Members of the three (3) proposed Putative Classes.

52.    <u>Adequacy</u>. Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the three (3) proposed Putative Classes because her interests coincide with, and are not antagonistic to, the interests of the Members of each proposed Putative Class she seeks to represent; she has retained counsel competent and experienced in such litigation; and she intends to prosecute this action vigorously. Plaintiff and her Counsel will fairly and adequately protect the interests of Members of the three (3) proposed Putative Classes.

53.    <u>Superiority</u>. Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the Members of the three (3) proposed Putative Classes predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Liability will be determined based on a common set of facts and legal theories. Willfulness will be determined based on Defendant's conduct and knowledge, not upon the effect of Defendant's conduct on the Members of the three (3) Putative Classes.

54.    The statutory damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the Members of the three (3) Putative Classes individually to redress effectively the wrongs done to them, as the TCPA has no attorney's

fee shifting provision. Even if the Members of the three (3) Putative Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

55. Class certification is appropriate because Defendant has acted on grounds generally applicable to the three (3) proposed Putative Classes, making appropriate equitable injunctive relief with respect to Plaintiff and the three proposed Putative Classes' Members. Fed. R. Civ. P. 23(b)(2).

56. <u>Injunctive and Declaratory Relief Appropriate</u>. Defendant has acted on grounds generally applicable to the Putative Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Putative Classes appropriate on a class wide basis. Moreover, on information and belief, and based on her experience, Plaintiff alleges that the text messages sent by Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

/ / /

/ / /

/ / /

/ / /

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF 47 U.S.C. 227(C)
### TELEMARKETING IN VIOLATION OF THE TCPA'S NATIONAL DO-NOT-CALL PROVISIONS
### (ON BEHALF OF THE NDNCR CLASS)

57. Plaintiff incorporates by reference paragraphs 1-56 of this Class Action Complaint as if fully set forth herein.

58. In violation of 47 U.S.C. § 227(c), Plaintiff and all Members of the NDNCR Putative Class, received advertising and/or telemarketing text messages promoting the sale of P&G products or services on a cellular phone number listed on the National Do-Not-Call Registry.

59. Plaintiff and the NDNCR Putative Class Members received more than one such text message in a twelve-month period.

60. By virtue of the foregoing, Defendant violated 47 U.S.C. § 227(c) as to Plaintiff and the NDNCR Putative Class by initiating, on more than one occasion, an advertising and/or telemarketing text message to the Cellphone Numbers of Plaintiff and the Members of the NDNCR Putative Class without the prior express written consent or permission of Plaintiff or the Members of the NDNCR Putative Class.

61. Pursuant to 47 U.S.C. § 227(c)(5), Plaintiff and each NDNCR Putative Class Member is entitled to recover from Defendant $500.00 in statutory damages for each such violation. In the event that Defendant is found to have knowingly or willfully violated the TCPA, this Court may, in its discretion, increase the amount of statutory damages to not more than $1,500.00 for each such violation with Plaintiff and each NDNCR Putative Class Member.

62. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff, on behalf of herself and the NDNCR Putative Class, also seeks injunctive relief prohibiting Defendant's violations of the TCPA in the future.

## COUNT II
### VIOLATION OF 47 C.F.R. § 64.1200(D)(3)
### FAILURE TO HONOR INTERNAL DO-NOT-CALL LIST REQUESTS
### (ON BEHALF OF THE IDNCR CLASS)

63. Plaintiff incorporates by reference paragraphs 1-62 of this Class Action Complaint as if fully set forth herein.

64. Plaintiff and the IDNCR Putative Class each asked Defendant to stop sending advertising and/or telemarketing text messages to them.

65. In violation of 47 C.F.R. § 64.1200(d)(3), Defendant continued to send advertising and/or telemarketing text messages to Plaintiff and the IDNCR Putative Class after they were listed on Defendant's Internal Do-Not-Call List.

66. Plaintiff and the IDNCR Putative Class received more than one such text message in a twelve-month period.

67. Pursuant to 47 U.S.C. § 227(c)(5), Plaintiff and each IDNCR Putative Class Member is entitled to recover from Defendant $500.00 in statutory damages for each such violation. In the event that Defendant is found to have knowingly or willfully violated the TCPA, this Court may, in its discretion, increase the amount of statutory damages to not more than $1,500.00 for each such violation with Plaintiff and each IDNCR Putative Class Member .

68. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff, on behalf of herself and the IDNCR Putative Class, also seeks injunctive relief prohibiting Defendant's violations of the TCPA in the future.

/ / /

/ / /

/ / /

## COUNT III
### VIOLATION OF MD. CODE ANN., COM. LAW §§ 14-3201, *ET SEQ.*
### TELEMARKETING IN VIOLATION OF THE MCPA'S NATIONAL DO-NOT-CALL PROVISIONS AND INTERNAL DO-NOT-CALL PROVISIONS
### (ON BEHALF OF THE MCPA SUB-CLASS)

69. Plaintiff incorporates by reference paragraphs 1-68 of this Complaint as if fully set forth herein.

70. In violation of 47 U.S.C. § 227(c), Plaintiff and all Members of the MCPA Putative Sub-Class, received advertising and/or telemarketing text messages promoting the sale of P&G products or services on a cellular phone number listed on the National Do-Not-Call Registry.

71. Plaintiff and the MCPA Sub-Class Members received more than one such text message in a twelve-month period.

72. By virtue of the foregoing, Defendant violated Md. Code Ann., Com. Law § 14-3201(2) as to Plaintiff and the MCPA Putative Sub-Class by initiating, on more than one occasion, a advertising and/or telemarketing text message to the Cellphone Numbers of Plaintiff and the Members of the MCPA Putative Sub-Class without the prior express written consent or permission of Plaintiff or the Members of the MCPA Putative Sub-Class, and without there being an active non-terminated established business relationship with the Plaintiff or the Members of the MCPA Putative Sub-Class.

73. Pursuant to Md. Code Ann., Com. Law § 14-3202(b), Plaintiff and each MCPA Putative Sub-Class Member is entitled to recover from Defendant statutory damages in the amount of $500.00 in for each such violation, or actual damages sustained, whichever is greater, as well as reasonable attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and as representative of all other persons similarly situated, prays for judgment against Defendant, awarding relief as follows:

      a.      Certifying the proposed NDNCR Class, IDNCR Class, and MCPA Sub-Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and her counsel to represent all three (3) classes;

      b.      As to the NDNCR Class, statutory damages as provided for under 47 U.S.C. § 227(c)(5), trebled as may be appropriate;

      c.      As to the IDNCR Class, statutory damages as provided for under 47 U.S.C. § 227(c)(5), trebled as may be appropriate;

      d.      As to the MCPA Sub-Class, statutory damages as provided under Md. Code Ann., Com. Law § 14-3202(b);

      e.      As to the NDNCR Class, a permanent injunction restraining Defendant from sending, or having sent on their behalf, any additional non-emergency text messages to Cellphone Numbers that are on the National Do-Not-Call Registry without first obtaining the prior express written consent of the text messaged party or at a time when no established business relationship exists between Defendant and the recipients of Defendant's text message advertisements;

      f.      As to the IDNCR Class, a permanent injunction restraining Defendant from sending, or having sent on their behalf, any additional non-emergency text messages to Cellphone Numbers that are on the Internal Do-Not-Call List without first obtaining the prior express written consent of the text messaged party;

      g.      Pre-judgment interest from the date of filing this suit;

      h.      A reasonable attorney's fee to be paid out of any common fund created by virtue of this litigation;

      i.      All costs of this proceeding; and

      j.      All general, special and equitable relief to which Plaintiff and the respective

Members of the NDNCR Class, IDNCR Class, and MCPA Sub-Class are entitled to by law.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts so triable.

Dated: June 1, 2023

        SIRI & GLIMSTAD

        */s/ Christopher Wiest*
        Christopher Wiest (OH 0077931)
        Chris Wiest, Atty at Law, PLLC
        25 Town Center Blvd, Suite 104
        Crestview Hills, KY 41017
        Tel: (513) 257-1895
        Fax: (859) 495-0803
        E: chris@cwiestlaw.com

        Mason A. Barney (*pro hac* motion to be filed)
        Kyle D. McLean (*pro hac* motion to be filed)
        745 5th Avenue, Suite 500
        New York, New York 10151
        Tel: (212) 532-1091
        E: mbarney@sirillp.com
        E: kmclean@sirillp.com

        *Attorneys for Plaintiff and the Putative Classes*